**UNITED STATES of America**

v.

**Wilbur CARTER.**

**No. 23288.**

United States District Court
E. D. Pennsylvania.

Feb. 11, 1969.

Drew J. T. O'Keefe, U. S. Atty., Anthony F. List, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Halbert, Kanter, Hirschhorn & Gilson, by Thomas F. Gilson, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

JOSEPH S. LORD, III, District Judge.

On April 24, 1968, Bernard Harris, Melvin Lindsey and Alfred Jasper entered the Citizens Bank and Trust Company, 1849 South Street, Philadelphia, and took from its employes the sum of $54,221.00. The defendant in this case, Wilbur Carter, was indicted and convicted of three counts of aiding and abetting in the commission of that bank robbery. 18 U.S.C. §§ 2 and 2113(a), (b)

and (d). He now moves for a new trial and directed verdict of acquittal. For the reasons stated below, the motions are denied.

### Was It Error To Allow The Government To Impeach Bernard Harris?

During the course of the trial it became apparent that, to the surprise of the Government, Bernard Harris was a hostile witness. The Government relied on Harris to prove the *corpus delicti* of the charge of aiding and abetting. Without that proof the testimony of two witnesses that the defendant had admitted committing the crime would not have been admissible. The defendant argues that the *corpus delicti* was improperly established through the impeachment of Harris, since impeachment may not be used as substantive evidence, but only to discredit the prior testimony. Therefore, defendant argues his admissions were not properly in evidence and the verdict may not stand. Although we agree with defendant's general formulation of the law, we conclude that there was no prejudicial error here in allowing the Government to impeach Harris, and more importantly, that since the Government did not take advantage of the right so given, his testimony was proper.

What happened at trial was this: Harris first testified that no car was used in the bank robbery. Several moments later he testified in response to a non-leading question and over no objection that the reason that they were able to proceed with their plans to rob the bank was that they now had a car, and further, that the defendant was the one in possession of the car. The Government, however, not content to let two versions of the story stand, apparently sought to have the witness disclaim his former testimony: "Didn't you just testify prior to this that you were not going to use the car?" A defense objection was properly sustained.

The United States Attorney then approached the bench and upon representation that the witness had assured him the previous evening and that very morning and afternoon that he would testify that the defendant was the "wheel man", the court in its discretion permitted the Government to cross-examine because of surprise. A careful review of the record, however, reveals that there was, in fact, no impeachment at all of the witness. What followed was an examination generally permissible on direct; leading questions, of which there were few, were permissible because Harris was a hostile witness. When the Government sought to examine Harris on the basis of a prior statement he had made in his testimony, the following colloquy took place.

"Q. Now, did you state that you picked Jasper up the next morning?

"A. No. I didn't make that—in that case I did not make that statement.

"Q. Didn't you say when I asked you—

"A. Oh, yes. When you say did I state, what are you speaking of? Did I make the statement here in the Courtroom or did I make the statement prior to this trial?

"Q. The statement here in the Courtroom that you picked up Jasper the next morning?

"THE COURT: What is the difference whether he said it or not? Do you want to know whether he picked up Jasper the next morning?

"MR. LIST: I want to know, Your Honor.

"THE COURT: Ask him whether he picked him up, not whether he said he picked him up.

"THE WITNESS: Yes, I did.

"THE COURT: See how easy it is?"

And later the court ruled, not only that there had been no cross-examination, but also that since there had appeared to be no surprise in Harris' further testimony, he could not be examined on the basis of prior inconsistent statements.

### Was It Error To Allow The Government To Impeach Mamie Brookins?

Through the testimony of Mamie Brookins, the sister of Alfred Jasper, the Government tried to prove that the· defendant was in the company of Bernard Harris the evening before the robbery at her apartment. It became apparent soon after Mrs. Brookins took the stand that she would not so testify, although she had previously indicated that she would in a statement to two F.B.I. agents.

■ The defendant argues that under the law of Pennsylvania it is not permissible to plead surprise by showing a prior inconsistent *oral* statement not made in the presence of the party calling the witness or its counsel. Selden v. Metropolitan Life Insur. Co., 157 Pa. Super. 500, 43 A.2d 571 (1945). Assuming *arguendo* that a statement made to the F.B.I. is not a statement made to a party, we think that it is nonetheless within the broad discretion of the trial judge to permit cross-examination of a party's own witness because of surprise where it appears to the satisfaction of the court that the surprise is genuine. The rule in the federal courts is that assurances of an attorney are *prima facie* sufficient to permit the court to invoke its discretion and permit cross-examination, United States v. Graham, 102 F.2d 436 (C.A.2, 1939), and we are in no way limited to the state rule, assuming it obtains. See F.R.Crim.P., rule 26. Here, the court went further in assuring that there was indeed surprise by examining the statement taken from Mrs. Brookins by the two agents. It is noteworthy that the conclusion of the court that there was surprise was verified by the fact that Mrs. Brookins supplied the defendant with a defense of alibi while testifying on cross-examination by defendant's counsel. The defendant could not conceivably have been harmed by the ruling.

### Was The Evidence Sufficient To Support A Conviction Of Aiding And Abetting The Commission Of A Bank Robbery During Which Life Was Put In Jeopardy With A Dangerous Weapon under 18 U.S.C. § 2113(d)?

■ We agree that the proper standard in evaluating whether life was put in jeopardy is an objective one. The question here, then, is whether, construing the evidence in the light most favorable to the Government, there was sufficient evidence from which the jury might find beyond a reasonable doubt that the guns used in the commission of the crime were, in fact, loaded.

■ First, it is clear that the guns were used in a manner calculated to put the bank employes in fear of great bodily harm. Their use was intended to carry the message that they were loaded. Similar evidence was sufficient to sustain a conviction under 18 U.S.C. § 2113(d) in Lewis v. United States, 365 F.2d 672 (C.A. 10, 1966), *cert. denied,* 386 U.S. 945, 87 S.Ct. 978, 17 L.Ed.2d 875 (1967). But in addition to this evidence the jury here had much more to go on. Herbert Lee Hamilton, a fellow inmate of defendant in the Philadelphia Prison Detention Center, testified that on April 25, 1968, the defendant told him that he was a co-adventurer in the robbery. Hamilton testified further: "He said he had directed one of them inside the bank to take no precaution, to shoot if they had to. I believe he stated he directed Harris to do that." The jury could reasonably have inferred that the guns were loaded from the fact that Carter directed one of the robbers to shoot if necessary. We conclude that the evidence was sufficient to support a charge of aiding and abetting the crime proscribed in 18 U.S.C. § 2113(d).

### ORDER

And now, this 11th day of February 1969, upon consideration of the briefs and arguments, it is ordered that the motions of the defendant Wilbur Carter for judgment of acquittal, or, in the alternative, for a new trial be and they hereby are denied.